IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID REYES, | No. C 11-2747 YGR (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| OFFICER SOTELO, et al., | (DOCKET NO. 21) |
| Defendants. | |

## INTRODUCTION

On June 7, 2011, Plaintiff David Reyes, a state prisoner incarcerated at Salinas Valley State Prison ("SVSP"), filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging constitutional violations that occurred in 2006 at SVSP. Plaintiff alleges that Defendants SVSP Correctional Sergeant Sotelo ("Sotelo") and SVSP Correctional Officer Luna ("Luna") violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force, withholding food, and exposing him to unhealthy living conditions. The Court issued an Order of Service on July 1, 2011, finding cognizable Eighth Amendment claims against Defendants. (Docket no. 3.)

Before the Court is Defendants' motion for summary judgment on the ground that the action is barred by the applicable statute of limitations. (Docket no. 21.) Plaintiff has filed his opposition, and Defendants have filed their reply. (Docket nos. 28, 30.) The statute of limitations argument was previously raised by Defendants in a motion to dismiss and the dispositive issue was if Plaintiff was entitled to tolling due to insanity that prevented him from timely filing his case during the relevant time period of 2006 to 2010. The motion to dismiss was denied as the issues surrounding his mental competence needed to be addressed in a motion for summary judgment or at trial -- where the Court

is not limited to consideration of the pleadings. (Docket no. 20.) The issue of Plaintiff's sanity at the relevant time and if it should provide for tolling is the subject of this motion. Defendants' argue that Plaintiff's mental health history and extensive litigation during the relevant time indicate he was sane and not entitled to tolling. Having read and considered the papers submitted by the parties, the Court GRANTS Defendants' motion for summary judgment.

## **BACKGROUND**

### **Factual Background for Present Case**

Plaintiff alleges that in March 2006 he asked Defendant Sotelo for legal papers relating to a drug possession charge against Plaintiff in Amador County. (Compl. at 3.) Defendant Sotelo opened Plaintiff's tray slot, sprayed pepper spray into the cell, on the walls, ceiling, floor, sink and toilet, and then closed the tray door. (*Id.*) Plaintiff suffered pain in his lungs, had breathing difficulty, could not see, and lost consciousness. (*Id.*) Defendant Sotelo returned half an hour later, ordered Plaintiff to get to his knees, and then shackled and handcuffed him. *(Id*. at 4.) Once Plaintiff was shackled, Defendants Sotelo and Luna struck and kicked him in the torso until he lost consciousness, causing bruising and cuts. (*Id.*) Plaintiff was taken to the shower and then was returned to his cell, where everything had been removed and Sotelo asked him if he was "going to keep running [his] mouth." (*Id.*)

Defendants left Plaintiff in his cell with nothing but his underwear and with no running water for approximately two and a half weeks. (*Id.* at 5.) Defendants also withheld food from Plaintiff for two and a half weeks. (*Id.*) Eventually, a psychiatric technician arrived, and the poor condition of Plaintiff's cell was remedied. (*Id.*) Thereafter, on two separate occasions, Plaintiff attempted to file an administrative grievance regarding Defendants' conduct, but Defendant Sotelo destroyed Plaintiff's grievance forms. (*Id.* at 6.)

### **Mental Health Care History**

The following facts are undisputed, unless specifically noted:

The California Department of Corrections and Rehabilitation has multiple levels of care to provide inmates access to mental health services. (Decl. Telander ¶¶ 4-6.) The Correctional Clinical Case Management System (CCCMS) is the lowest level of mental health care provided to

inmates and the Enhanced Outpatient Program (EOP) is the highest. *(Id.* ¶¶ 5-6.) Plaintiff participated in CCCMS. *(Id.* ¶ 10.)

On April 6, 2006, a few weeks after the events that gave rise to this action, Plaintiff expressed his concern for the return of his property during an evaluation with a psychologist. (Decl. Maiorino, AGO at 125.) It was noted by the psychologist that while Plaintiff appeared dysphoric and stressed, his thought process, thought content and behavior was appropriate. *(Id.)* Interdisciplinary Progress Notes on April 10 and April 14, 2006, also noted that Plaintiff appeared normal and stable with no evidence of distress and appeared positive and rational even though he was anxious and panicky. *(Id.* at 127-131.) On April 20, 2006, Plaintiff requested placement in the Sensitive Needs Yard because he stated he was, "too old for messing around." *(Id.* at 136.) It was again noted in an April 26, 2006, assessment that Plaintiff's speech and thought process were rational, though he did state he was having hallucinations. *(Id.* at 138.) Plaintiff was also concerned with enemies at SVSP as he had dropped out from his prison gang. *(Id.)*

On June 1, 2006, Plaintiff appeared before a classification committee regarding his continued placement in Administrative Segregation for his own protection. *(Id.* at 166.) Plaintiff acknowledged his understanding and agreement with the committee's actions. *(Id.)* On August 31, 2006, Plaintiff appeared before another classification committee regarding his continued placement in Administrative Segregation for his own protection. *(Id.* at 168.) Plaintiff stated he had no medical concerns, was receiving appropriate mental health care, he understood the committee's actions and agreed with the decision. *(Id.)* Similar committee hearings occurred on October 12, 2006, and January 24, 2007. *(Id.* at 169, 172.) In both instances, Plaintiff indicated he had no medical concerns, had been receiving appropriate mental health care and understood and agreed with the decisions. *(Id.)*

**Litigation History**[1]

*Present Case*

On January 24, 2011, Plaintiff filed a separate lawsuit in the United States District Court for

---

[1] The Court will take judicial notice of court records. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.")

3

the Eastern District of California, Case no. 11-CV-00219-GEB-GGH, which also listed Defendant Sotelo as violating Plaintiff's Eighth Amendment rights while he was incarcerated at SVSP, and it appears they are the same claims from the instant case. On April 20, 2011, Eastern District Magistrate Judge Gregory G. Hollows dismissed Plaintiff's complaint with leave to file an amended complaint and directing that he bring all claims that occurred at SVSP in the Northern District. Plaintiff complied and filed the instant case in this Court on June 7, 2011.

*Prior Cases*

On March 7, 2006, Plaintiff filed a *pro se* petition for writ of habeas corpus with the California Supreme Court containing detailed arguments in support of his claim. (Request for Judicial Notice (Docket no. 25) AGO at 65-74.) There is a declaration from another inmate who states he prepared the petition, though Plaintiff signed the petition under the penalty of perjury. (*Id*. at 73-74.) Plaintiff requested and received law library access on April 21, 2006, April 28, 2006, May 5, 2006, May 12, 2006 and May 23, 2006. (Decl. Maiorino, AGO at 153-157.)

In 2007, Plaintiff was a criminal defendant in Amador County Superior Court. (Request for Judicial Notice, AGO at 78.) Plaintiff and his attorney filed a motion for discovery seeking the personnel records of a peace officer. (*Id*. at 80-101.) In support of this motion, Plaintiff filed a detailed three page declaration, signed under the penalty of perjury on May 3, 2007. (*Id*. at 102-104.)

On April 30, 2008, Plaintiff filed a pro se petition for writ of habeas corpus in the United States District Court for the Southern District of California, Case no. 08-CV-00791-JLS-PCL. Plaintiff filed a detailed petition setting out his arguments for habeas relief and again signed under the penalty of perjury along with other reasoned and lengthy filings during the course of the case.

On February 2, 2010, plaintiff filed a pro se civil rights action in the United States District Court for the Eastern District of California, Case no. 10-CV-00267-JFM. Plaintiff filed a detailed nine page complaint, signed under the penalty of perjury and included 203 pages of exhibits. That court ordered Plaintiff to fill out several forms so service could be effectuated, but Plaintiff failed to

respond to the court and the case was dismissed.[2]

## DISCUSSION

### I.     Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at

---

[2] The subject matter of this Eastern District action may be similar to the instant action and the ramifications regarding the statute of limitations will be discussed below.

323 (internal quotations and citations omitted).

///

///

## II.     Statute of Limitations

*Standard*

The appropriate period for claims brought under Section 1983 is that of the forum state's statute of limitations for personal injury torts. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985), *superseded by statute on other grounds, as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-78 (2004); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). The relevant statute of limitations in California for personal injury actions is the two-year period set forth in California Civil Procedure Code Section 335.1 -- the applicable statute in Section 1983 actions. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004).

Federal law determines when a cause of action accrues and when the statute of limitations begins to run in a Section 1983 action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See TwoRivers*, 174 F.3d at 991-92; *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994). Federal law, not state law, determines when an action "commences" for purposes of the statute of limitations. *Sain v. City of Bend*, 309 F.3d 1134, 1136-37 (9th Cir. 2002). Thus, an action in federal court containing a federal cause of action such as a Section 1983 claim is commenced by filing a complaint with the court. *See id.* (citing Fed. R. Civ. P. 3).

Notwithstanding the foregoing, a federal court must give effect to a state's tolling provisions. *See Hardin v. Straub*, 490 U.S. 536, 543-44 (1989); *Marks v. Parra*, 785 F.2d 1419, 1419-20 (9th Cir. 1986). California Civil Procedure Code § 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal. Civ. Proc. Code § 352.1(a). The tolling is not indefinite however. The disability of imprisonment delays the accrual of the cause of action for a maximum of two years. *See id.* Thus, an inmate has four years to bring a Section 1983 claim for damages in California, i.e., the regular two-year period under California Civil

Procedure Code Section 335.1 plus two years during which accrual was postponed due to the disability of imprisonment. Here, Plaintiff's arrest and incarceration trigger tolling under California Civil Procedure Code Section 352.1, not to exceed two years. *See Elliott*, 25 F.3d at 802-03.

Also relevant is California Civil Procedure Code § 352(a) which provides for tolling if the person is insane at the time the cause of action accrued. For purposes of the tolling provision, "the term 'insane' has been defined as a condition of mental derangement which renders the sufferer incapable of caring for his property or transacting business, or understanding the nature or effects of his acts." *Hsu v. Mt. Zion Hospital*, 259 Cal. App. 2d 562, 571 (1968); *cf. Feeley v. Southern Pac. Trans. Co.*, 234 Cal. App. 3d 949, 952 (1991) (tolling proper for time during which plaintiff was in a coma immediately after the injury that gave rise to his cause of action); *Snyder v. Boy Scouts of America*, 205 Cal. App. 3d 1318, 1324 (1988) (post-traumatic stress disorder does not count as "insanity" that tolls the limitations period). The disability of insanity must exist at the time the cause of action accrues in order to toll the limitations period. Cal. Civ. Proc. Code § 357. Under California law, once the cause of action has accrued and the statute has begun to run, no later disability can suspend it. *Larsson v. Cedars of Lebanon Hosp.*, 97 Cal. App. 2d 704, 707 (1950).

Separate disabilities, each worthy of tolling, occurring simultaneously cannot be tacked together to toll the statute of limitations. *Rose v. Petaluma & Santa Rosa Ry. Co.*, 64 Cal. App. 213, 217 (1923) ("[I]t is a settled rule of construction that the exemption period cannot be extended by the connection of one disability with another; in other words, a succession of disabilities cannot be tacked upon the first disability so as to prevent the operation of the statute.") *disapproved on other grounds in Harris v. Industrial Accident Comm'n of Cal.*, 204 Cal. 432, 438 (1928).

*Analysis*

As noted above, Plaintiff does not dispute any of the facts set forth by Defendants with respect to his mental health reports or history. Somewhat confusingly, even though Defendants' motion challenges Plaintiff's allegation that he was insane, Plaintiff has failed to even address the mental health reports and evidence of his sanity in his opposition to the motion. The entirety of Plaintiff's opposition contends that all of the legal documents he filed were prepared by other inmates, therefore demonstrating his inability to care for his property or conduct business.

///

The undisputed evidence indicates that while Plaintiff was under treatment for his mental health needs, he was clearly sane during the relevant time. He was in the lowest level of mental health treatment and the frequent reports from the mental health providers do not indicate any mental problems that would allow for tolling pursuant to California Civil Procedure Code § 352(a). Plaintiff was quite capable of caring for his property, transacting business and understanding the nature or effects of his acts. Many of his interactions with the mental health staff and other prison officials involved Plaintiff's desire to be in the Sensitive Needs Yard or protected housing due to his fears after dropping out of a gang. Plaintiff was before committees nearly every month in the summer and fall of 2006, to insure his continued placement in Administrative Segregation for his own protection. Plaintiff understood the nature of the committee hearings and agreed with the results and Plaintiff's actions and desire to remain safe demonstrate an understanding of what was occurring. The court declines to stereotype all people who are mentally ill, especially those who are receiving treatment, as insane and unable to transact business or understand the nature or effects of their acts. Plaintiff's evidence of alleged insanity does not meet the requirements to provide for tolling. *See Hsu*, 259 Cal. App. 2d at 571.

Plaintiff does not refute that he purposefully sought special housing to remain safe or that mental health reports from the relevant time do not indicate any mental health crisis, rather he only argues that because others prepared his lawsuits and prepared his legal filings, he must have been insane. This conclusory allegation with no support is insufficient to oppose summary judgment. While it may be common for other prisoners to prepare legal filings, that alone fails to show insanity. As Plaintiff filed many cases and many detailed filings with each case, it is clear that he was somehow able to communicate the facts of his underlying criminal case and civil rights actions to other prisoners to prepare.[3] Of course, Plaintiff signed each filing under the penalty of perjury. It

---

[3] Plaintiff includes declarations from the prisoners who prepared his filings which state that Plaintiff was unable to communicate rationally. However, this is contradicted by the many filings on Plaintiff's behalf which contained great detail regarding his legal claims which were somehow communicated to the prisoners helping Plaintiff.

8

is also undisputed that Plaintiff requested and was provided access to the law library several times immediately after the incident in this case, so he was apparently able to help those who drafted his legal papers or was conducting his own legal research. His contention that his impairment warrants tolling is not persuasive because of the extensive evidence of the various legal activities he did undertake during the time he contends he was mentally unable to file suit. The court need not credit a party's version of the facts that is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380–83 (2007).

Plaintiff also stated in his opposition to this motion, that "[i]t was not until July 2010, that plaintiff's mental state improved to the level that he could recognize that the defendants violated his civil rights and that he should obtain assistance in preparing a civil rights action for his treatment in ad seg at Salinas Valley State Prison." (Docket no. 28 at 6-7.) However, this statement is contradicted by Plaintiff's previously filed case that neither party has addressed.

On February 2, 2010, plaintiff filed a pro se civil rights action in the United States District Court for the Eastern District of California, Case no. 10-CV-00267-JFM. In the body of the complaint Plaintiff referenced how he was assaulted by prison staff because he demanded the return of his legal property, though he identified no defendant or date. (Case no. 10-CV-00267-JFM, Docket no. 1 at 7.) In one of the exhibits attached to the complaint, Plaintiff referenced a February 29, 2006,[4] incident where he was assaulted and peppered sprayed while in his cell and then remained in his cell for two weeks without water and his bedding and clothing was removed. (*Id*. at 40.) It appears Plaintiff was referencing the same incident from the instant case. Plaintiff also stated that he attempted to exhaust his administrative remedies by filing inmate appeals, but prison staff destroyed them. (*Id*. at 2.) Thus, Plaintiff was aware of the alleged civil rights violation prior the expiration of the statute of limitations, during a time he alleges in this action, that he was insane. Even before he filed this February 2, 2010 complaint, Plaintiff was aware of the violation and was attempting to exhaust his administrative remedies so a suit could be brought either by himself or by providing the relevant information to another prisoner to prepare the legal papers.

---

[4] The Court notes there was no February 29 in 2006.

9

All of this evidence contradicts Plaintiff's unsupported assertion that he was insane at this time and unaware of the violation of his rights which entitle him to tolling. *See Tatum v. Schwartz*, 405 Fed. App'x 169, 171 (9th Cir. 2010) (plaintiff not insane pursuant to Cal. Civ. Proc. Code § 352(a) when she "filed her workers' compensation claim, was deemed by a psychiatrist to be alert and oriented with normal affect, wrote a letter stating her desire 'to return to work as soon as possible,' reported subsiding anxiety to an almost negligible level, and hired legal counsel."); *see also Barber v. Municipality of Los Angeles*, 52 Fed. App'x. 426, 427 (9th Cir. 2002) (no tolling based on plaintiff's ability to prosecute a legal action). Based on all this evidence, Plaintiff has failed to demonstrate there is a genuine issue for trial regarding his alleged insanity and Defendants' motion for summary judgment must be granted.[5]

While Plaintiff did not discuss his February 2010, Eastern District case that arguably raised the same claim, the Court will address what effect, if any, that case has on the statute of limitations analysis. If the incident occurred in late February 2006 and then continued for several weeks the statute of limitations began running in mid March 2006 and ended in March 2010, thus the Eastern District case filed in February 2010 was timely. On April 27, 2010, that court ordered Plaintiff to complete and return several forms, within thirty days, so service could be effectuated on Defendants. (Case no. 10-CV-00267-JFM, Docket no. 8.) Plaintiff never responded so four months later the case was dismissed without prejudice on August 10, 2010. (Case no. 10-CV-00267-JFM, Docket no. 12.) Assuming that Plaintiff would be entitled to tolling while the Eastern District case was pending, the instant case was still filed beyond the statute of limitations.[6] Plaintiff filed the Eastern District case

---

[5] Based on the overwhelming evidence that contradicts Plaintiff's allegations of insanity, the Court finds that a hearing is not necessary as both parties have already had ample time and opportunity to submit evidence. Merely hearing both sides reiterate their positions that have already been laid out in the instant motion would not be beneficial.

[6] Plaintiff would most likely not be entitled to tolling. Generally, federal courts apply the forum state's law regarding equitable tolling. *Fink v. Shedler*, 192 F.3d 911, 914, 916 (9th Cir. 1999); *Bacon v. City of L.A.*, 843 F.2d 372, 374 (9th Cir. 1988). Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: "(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." *Bacon*, 843 F.2d at 374. As Plaintiff's prior action was dismissed without prejudice due to his own failure to respond to a court order so service could commence, Defendants were never notified of the

10

approximately six weeks prior to the expiration of the statute of limitations. Providing Plaintiff an additional six weeks after the Eastern District case was dismissed would have placed the deadline to file at approximately September 21, 2006, though the instant case was not filed until more than three months later. For all these reasons, summary judgment is granted for Defendants as this case is untimely.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Defendants' motion for summary judgment (Docket no. 21) is GRANTED in its entirety.

2. The Clerk of the Court shall enter judgment in favor of Defendants, terminate all pending motions, and close the file.

3. This Order terminates Docket no. 21.

IT IS SO ORDERED

DATED  July 10, 2013

_____
**YVONNE GONZALEZ RODRIGUEZ**
**UNITED STATES DISTRICT COURT JUDGE**

---

claims. Thus, Plaintiff is unable to meet the first or third requirements for tolling.

G:\PRO-SE\YGR\CR.11\Reyes2747.grantMSJ.ab.wpd     11